**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**P. WAYNE WOODARD**,

                **Plaintiff,**          1:10-cv-753
                                                   (GLS/ATB)
          **v.**

**CSX TRANSPORTATION, INC.,**

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Hacker, Murphy Law Firm | JAMES E. HACKER, ESQ. |
| 7 Airport Park Boulevard | THOMAS D. BUCHANAN, ESQ. |
| Latham, NY 12110-0104 | |
| | |
| Moody, Strople Law Firm | MICHAEL R. DAVIS, ESQ. |
| P.O. Box 1138 | WILLIAM J. MOODY, JR., ESQ. |
| 500 Crawford Street | |
| Suite 300 | |
| Portsmouth, VA 23705-1138 | |
| | |
| **FOR THE DEFENDANT:** | |
| Eckert, Seamans Law Firm | LAWRENCE R. BAILEY, JR., ESQ. |
| 10 Bank Street | |
| Suite 1061 | |
| White Plains, NY 10606 | |
| | |
| Office of Thomas M. Smith | THOMAS M. SMITH, ESQ. |
| 845 West End Avenue #11F | |
| New York, NY 10025 | |

**Gary L. Sharpe
Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff P. Wayne Woodard commenced this action under the Federal Employers' Liability Act[1] ("FELA"), alleging that he was injured as a result of defendant CSX Transportation, Inc.'s ("CSX") failure to comply with the Federal Railroad Safety Act[2] ("FRSA") and the Federal Safety Appliance Act[3] ("SAA"). (*See* Compl. ¶¶ 5, 10, Dkt. No. 1.) Pending is CSX's motion for partial summary judgment with respect to Woodard's SAA claim. (Dkt. No. 41.) For the reasons that follow, CSX's motion is denied.

### **II. Background**[4]

On November 8, 2008, Woodard, a stevedore for CSX, was allegedly injured while unloading vehicles from multi-level railcars at CSX's Selkirk, New York train yard. (Def.'s Statement of Material Facts ("SMF") ¶¶ 1-3, 14, Dkt. No. 41, Attach. 8.) At the time of the accident, Woodard was unloading railcar TTGX 961404 (the "Railcar"), which arrived at Selkirk just

---

[1] *See* 45 U.S.C. §§ 51-60.

[2] *See* 49 U.S.C. §§ 20101-20120.

[3] *See* 49 U.S.C. §§ 20301-20306.

[4] The facts are undisputed unless otherwise noted.

2

after midnight that same day, on Receiving Track #1.  (*Id.* ¶¶ 3, 4, 6, 8; Dkt. No. 42, Attach. 2 ¶ 6.)  In addition to being "blue-flagged," "the de-railers were in place on Receiving Track #1"; the handbrakes on each of the railcars were engaged; and "there were no locomotives attached to the train." (Def.'s SMF ¶¶ 10-13.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, No. 1:09-cv-652, 2011 WL 5599571, at *4 (N.D.N.Y. Nov. 17, 2011).

### IV. Discussion

CSX argues Woodard's SAA claim should be dismissed because the Railcar was not "in use" at the time of the accident.  (Dkt. No. 41, Attach. 10 at 4-9.)  In response, Woodard acknowledges the "in use" inquiry is a question of law, but counters that the Railcar was "in use" at the time he was injured.  (*See* Dkt. No. 42 at 5-13.)  The court agrees with Woodard.

Although the SAA does not create an independent cause of action, an employee injured as a result of a violation thereof may commence an action under FELA.  *See Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395

3

U.S. 164, 166 (1969). In that action, the employee need only prove the existence of a statutory violation; neither the common law principle of proximate causation nor "the defenses of contributory negligence and assumption of risk" are applicable. *Id.* (internal citations omitted). Stated another way, an SAA violation constitutes negligence *per se* in a FELA suit. *See Philllips v. CSX Transp. Inc.*, 190 F.3d 285, 288 (4th Cir. 1999). However, before strict liability attaches, the court must decide, as a matter of law, if the rail vehicle was "in use." *See Paul v. Genesee & Wyo. Indus., Inc.*, 93 F. Supp. 2d 310, 315-16 (W.D.N.Y. 2000) (internal citations omitted).

To determine whether a railcar[5] was "'in use," courts analyze the following "primary" factors: "(1) the activity of the injured party and (2) the location of the vehicle at the time of the accident." *Kobe v. Canadian Nat'l Ry. Co.*, Civ. No. 06-3439, 2007 WL 2746640, at *6 (D. Minn. Sept. 18, 2007). In so doing, the court is mindful of the SAA's purpose—*i.e.,* "to

---

[5] In *Underhill v. CSX Transp., Inc.*, No. 1:05-CV-196-TS, 2006 WL 1128619, at *5 (N.D. Ind. Apr. 24, 2006), the court highlighted the distinction between cases involving trains and independent rail vehicles. Relying on the Supreme Court's decision in *United States v. Erie R.R. Co.*, 237 U.S. 402, 407-08 (1915), *Underhill* aptly stated—and this court agrees—that "cases deciding whether a train was in use have limited relevance" in cases, such as this one, dealing with independent railcars. *Underhill*, 2006 WL 1128619, at *4. Accordingly, CSX's reliance on cases discussing whether a train is "in use" is unpersuasive. (*See* Dkt. No. 41, Attach. 10 at 6-9; Dkt. No. 43 at 2-9.)

4

protect railroad workers from injury and death." *Underhill*, 2006 WL 1128619, at *6 (citing *United States v. Seaboard Air Line R.R. Co.*, 361 U.S. 78, 82-83 (1959)).  And despite the need to construe the SAA liberally, *see Seaboard Air Line*, 361 U.S. at 83, the so-called "in use" limitation was intended "to give railcar operators the opportunity to inspect for and correct safety appliance defects before" the SAA imposes strict liability, *Philllips*, 190 F.3d at 288.  As such, "injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility" are not covered by the SAA.  *Angell v. Chesapeake & Ohio Ry. Co.*, 618 F.2d 260, 262 (4th Cir. 1980).

Here, it is undisputed that Woodard was unloading the Railcar on Receiving Track #1 at the time he was injured.  (Def.'s SMF ¶¶ 2-3, 8.)  While these facts, standing alone, are sufficient to establish the Railcar was "in use," it is the absence of any proof that Woodard was inspecting, repairing, or servicing railroad equipment anywhere in the train yard that is fatal to CSX's argument.[6]  *See Angell*, 618 F.2d at 262.  Accordingly, the court concludes the Railcar was "in use" when Woodard was injured.  It

---

[6] The use of blue flags, de-railers, and/or handbrakes are, in this case, irrelevant given Woodard's role as a stevedore and the loaction of the train on the receiving track. (Def.'s SMF ¶¶ 2, 8-13.)

follows that CSX's motion is denied.[7]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that CSX's motion for partial summary judgment (Dkt. No. 41) is **DENIED**; and it is further

**ORDERED** that this case is deemed trial ready and the court, in due course, shall issue a trial scheduling order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 10, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court

---

[7] At trial, Woodard must still prove that CSX violated the SAA before strict liability attaches. In addition, his claim under the FRSA has not been addressed by either party. (Compl. ¶ 8.) Because the dispositive motion deadline has passed, the court deems this case trial ready and will issue a trial scheduling order in due course.

6